# United States Court of Appeals
## for the Sixth Circuit
### CASE NO. 25-5396

Dr. AMY DICHIARA

*Plaintiff/Appellant*

v.

SUMMIT MEDICAL GROUP, INC., DBA ST. ELIZABETH PHYSICIANS; ST. ELIZABETH MEDICAL CENTER, INC. DBA ST. ELIZABETH HEALTHCARE; DR. ROBERT PRICHARD; GARREN COLVIN

*Defendants/Appellees*

---

Appeal from the U.S. District Court, Eastern District of Kentucky, 2:22-cv-00111

---

### PLAINTIFF'S/APPELLANT'S REPLY BRIEF

---

Christopher Wiest (KY 90725)
Theodore J. Roberts (KY 100610)
Chris Wiest, Atty at Law, PLLC
50 E. Rivercenter Blvd, Ste. 1280
Covington, KY 41011
Tel:   513/257-1895
chris@cwiestlaw.com

Thomas B. Bruns (KY 84985)
Bruns Connell Vollmar & Armstrong
4555 Lake Forrest Drive, Suite 330
Cincinnati, Ohio 45242
Tel.:   513/312-9890
tbruns@bcvalaw.com

*Counsel for Plaintiff/Appellant*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................... iii

INTRODUCTION ........................................................................... 1

SUMMARY OF THE ARGUMENT……………………………………………1

ARGUMENT ................................................................................. 2

   I.   The district court erred in granting summary judgment to Defendants and denying summary judgment to Plaintiff as to liability on her Title VII and ADA retaliation claims…………...........................................2

     A. Dr. DiChiara engaged in protected activity when she "participated in any manner" in a "proceeding:" providing the plaintiffs' law firm with "ammunition" for and "to help build the case" for the Beckerich ADA and Title VII plaintiffs.........................................................................3

     B. Dr. DiChiara engaged in protected activity by opposing practices made illegal under Title VII and ADA, and Appellees knew as much................11

     C. Appellees admit under oath they had notice of Dr. DiChiara's participation and opposition, and the district court simply ignored these admissions..................................................................................14

     D. Adverse employment action was taken against Dr. DiChiara because of her protected activity..................................................................18

     E. SEH is also liable..................................................................19

  II.   The district court erred in granting summary judgment to Appellees and denying summary judgment to Dr. DiChiara on her KCRA claim…….21

 III.   The district court erred in granting summary judgment Appellees and denying summary judgment to Dr. DiChiara on her discharge against public policy claim........................................................................22

 IV.   The district court erred in granting summary judgment to SEP and denying summary judgment to Dr. DiChiara on her breach of contract claim........................................................................................23

**V.    The district court erred in granting summary judgment to Appellees SEH and Colvin and denying summary judgment to Dr. DiChiara on her tortious interference claim**..........................................................................**25**

**VI.    The district court erred in granting summary judgment to Appellees and denying summary judgment to Dr. DiChiara on her declaratory judgment claim** ...........................................................................**27**

**CONCLUSION** ..........................................................................................**28**

**CERTIFICATE OF SERVICE** ................................................................**28**

**CERTIFICATE OF COMPLIANCE** .......................................................**29**

# TABLE OF AUTHORITIES

## Cases

*Air Force Officer v. Austin*, 588 F. Supp. 3d 1338 (M.D. Ga. 2022)................... 8, 9

*Aldrich v. Rural Health Servs. Consortium, Inc.*,
579 F. App'x 335 (6th Cir. 2014)..................................................................... 5

*Anderson v. City of Bessemer City*, 470 U.S. 564 (1985)......................................16

*Armbruster v. Quinn*, 711 F.2d 1332 (6th Cir. 1983)..............................................20

*Barbour v. Garland*, 105 F.4th 579 (4th Cir. 2024).................................................11

*Baxter v. Palmigiano*, 425 U.S. 308 (1976)...........................................................17

*Beckerich v. St. Elizabeth Med. Ctr.*,
563 F. Supp. 3d 633 (E.D. Ky. 2021)...................................................................8

*Benningfield v. Fields,* 584 F.3d 731 (6th Cir. 2009).............................................21

*Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304 (6th Cir. 1989).....3, 4

*Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2006)...................................10

*Carrier Corp. v. NLRB*, 768 F.2d 778 (6th Cir. 1985)............................................20

*Cobble v. Yamamoto FB Eng'g, Inc.*,
2017 U.S. Dist. LEXIS 2561 (W.D. Ky. Jan. 9, 2017)......................................22

*Cowing v. Commare*, 499 S.W.3d 291 (Ky. Ct. App. 2016)...................................22

*Crawford v. Metro. Gov't of Nashville & Davidson Cty.*,
555 U.S. 271 (2009)............................................................................... 3, 11, 14

*Crutcher v. Commonwealth*, 883 F.2d 502 (6th Cir. 1989)....................................16

*EEOC v. Bd. of Governors of State Colls. & Univs.*,
957 F.2d 424 (7th Cir. 1992)............................................................................ 11

*EEOC v. Skanska USA Bldg., Inc.*, 550 F. App'x 253 (6th Cir. 2013)....................20

*Farmers Bank & Tr. Co. v. Willmott Hardwoods, Inc.*,
171 S.W.3d 4 (Ky. 2005)...................................................................................24

*Fort Bend Cty. v. Davis*, 587 U.S. 541 (2019)...................................................9, 10

*Graves v. United States*, 150 U.S. 118 (1893)........................................................17

*Gray v. State Farm Mut. Auto. Ins. Co.*, 159 F.4th 1024 (6th Cir. 2025)...... *passim*

*Groff v. DeJoy*, 600 U.S. 447 (2023)....................................................... 8

*Hamade v. Valiant Gov't Servs. LLC*,
2019 WL 1410904 (W.D. Ky. Mar. 28, 2019)...................................................21

*Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333 (6th Cir. 2021)...................11

*Johnson v. Univ. of Cincinnati*, 215 F.3d 561 (6th Cir. 2000).................4, 7, 11, 12

*Kenney v. Aspen Techs., Inc.*, 965 F.3d 443 (6th Cir. 2020)....................................2

*Kizer v. St. Jude Child.'s Rsch. Hosp.*,
2024 U.S. App. LEXIS 29429 (6th Cir. 2024)...................................................... 9

*Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862 (6th Cir. 2007)........................ 8

*Kline v. Tenn. Valley Auth.*, 128 F.3d 337 (6th Cir. 1997).......................................2

*Marshall v. Montaplast of N. Am., Inc.*, 575 S.W.3d 650 (Ky. 2019)....................23

*Martin v. Mecklenburg Cnty.*, 151 F. App'x 275 (4th Cir. 2005)...........................11

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).......................................2

*McKinney v. Galvin*, 701 F.2d 584 (6th Cir. 1983)...............................................17

*Merritt v. Dillard Paper Co.*, 120 F.3d 1181 (11th Cir. 1997)...............................11

*Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584 (6th Cir. 2007)................18

*Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883 (6th Cir. 2020)…………19

*Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784 (6th Cir. 2000).........................22

*Mulhall v. Ashcroft*, 287 F.3d 543 (6th Cir. 2002)................................................16

*Murphy v. District of Columbia*, 390 F. Supp. 3d 59 (D.D.C. 2019).....................11

*Myers v. Red Classic Transit*,
2019 U.S. Dist. LEXIS 202845 (E.D. Ky. 2019).............................................. 22

*New York Gaslight Club v. Carey*, 447 U.S. 54 (1980)..........................................10

*Newell v. Heritage Senior Living, LLC*,
2016 U.S. Dist. LEXIS 13416 (E.D. Pa. 2016)…………....………..…..15

iv

*Nguyen v. City of Cleveland*, 229 F.3d 559 (6th Cir. 2000)....................................2

*Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714 (6th Cir. 2008)....................2, 6, 12

*Patterson v. Blair*, 172 S.W.3d 361 (Ky. 2005)....................................................26

*Patterson v. Ga. Pac., LLC*, 38 F.4th 1336 (11th Cir. 2022)................................11

*Penny v. United Parcel Serv.*, 128 F.3d 408 (6th Cir. 1997)....................................2

*Poffenbarger v. Kendall*, 588 F. Supp. 3d 770 (S.D. Ohio 2022)........................... 8

*RAM Eng'g & Constr., Inc. v. Univ. of Louisville*,
    127 S.W.3d 579 (Ky. 2003)........................................................................24, 25

*Rorrer v. City of Stow*, 743 F.3d 1025 (6th Cir. 2014)..........................................2, 6

*Sanford v. Main St. Baptist Church Manor, Inc.*,
    449 F. App'x 488 (6th Cir. 2011)...............................................................19, 20

*Simpson v. Vanderbilt Univ.*, 359 F. App'x 562 (6th Cir. 2009)............................ 7

*Sitar v. Ind. Dep't of Trnsp.*, 344 F.3d 720 (7th Cir. 2003)................................... 15

*Sparkman v. Consol Energy, Inc.*, 571 S.W.3d 569 (Ky. 2019)............................26

*Spees v. James Marine, Inc.*, 617 F.3d 380 (6th Cir. 2010)................................... 4

*Tennant v. District of Columbia*, 2020 U.S. Dist. LEXIS 137502 (DCD 2020).... 15

*Texas v. Becerra*, 575 F. Supp. 3d 701 (N.D. Tex. 2021)........................................9

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981)……………………....19

*Theatre Realty Co. v. P.H. Meyer Co.*, 48 S.W.2d 1 (Ky. 1932).....................24, 25

*Truelove v. Trs. of the Univ. of D.C.*, 744 F. Supp. 307 (D.D.C. 1990).................11

*Upshaw v. Ford Motor Co.*, 576 F.3d 576 (6th Cir. 2009)……………………..... 18

*United States v. Simpson*, 520 F.3d 531 (6th Cir. 2008).......................................22

*White v. Baxter Healthcare Corp.*, 533 F.3d 381 (6th Cir. 2008)…………….…... 4

*Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400 (6th Cir. 2021)....................................14

*York v. Tenn. Crushed Stone Ass'n*, 684 F.2d 360 (6th Cir. 1982)..........................20

**Statutes**

42 U.S.C. § 2000e.................................................................... 8

42 U.S.C. § 2000e-3 .............................................................. 2, 9

42 U. S. C. §2000e-5.............................................................. 9

42 U.S.C. § 12203................................................................. 2, 3, 10

42 U.S.C. § 12112................................................................. 8

KRS 344.280....................................................................... 22

## INTRODUCTION

Beyond simply echoing the errors of the district court's opinion and order, Appellees' Brief also draws this Court's attention to plain irrelevancies, such as certain motivations of Dr. DiChiara.  (R. 29, at pg. 1, 6, 46-47).  Appellees do so while wholly ignoring: 1) the admissions of their 30(b)(6) witnesses, 2) controlling Title VII and ADA law especially in light of *Gray v. State Farm Mut. Auto. Ins. Co.*, 159 F.4th 1024 (6th Cir. 2025), and 3) direct "smoking gun" evidence that Dr. DiChiara's protected participation and opposition was Appellees' sole motivating factor in terminating her. (Doc. 50-44, "Your unauthorized disclosure of the subject emails to a law office which already had sued SEP and which was actively preparing to sue SEP again, and which emails related to the subject matter of the lawsuits...").  Simply put, Appellees could not and did not meet their burden for summary judgment, while Dr. DiChiara did.  Accordingly, the decision of the district court should be reversed in its entirety.

## SUMMARY OF THE ARGUMENT

The district court improperly granted summary judgment to Appellees and improperly denied partial summary judgment to Dr. DiChiara as to liability on most of her claims.

1

## ARGUMENT

I.  **The district court erred in granting summary judgment to Appellees and denying summary judgment to Dr. DiChiara as to liability on her Title VII and ADA retaliation claims**

To establish a *prima face* case of retaliation under Title VII, an employee must show "(1) [s]he . . . engaged in protected activity; (2) the employer knew of the exercise of the protected right; (3) an adverse employment action was subsequently taken against the employee; and (4) there was a causal connection between the protected activity and the adverse employment action." *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008). ADA retaliation is the same. *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014); 42 U.S.C § 12203(a); *Penny v. United Parcel Service*, 128 F.3d 408, 417 (6th Cir. 1997). "The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

When direct evidence of retaliation exists, there is no *McDonnell Douglas* burden-shifting analysis. *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 448 (6th Cir. 2020).

An employee demonstrates that she engaged in "protected activity" for purposes of the Title VII (or ADA) anti-retaliation provisions by alleging conduct that falls within either the opposition clause ("because [the employee] has opposed

2

any practice made an unlawful employment practice by this subchapter"), or the participation clause ("because [s]he has … testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter").  42 U.S.C. § 2000e-3(a); *see, also*, 42 USCS § 12203(a) (similar ADA language); *Crawford v. Metro. Gov't of Nashville & Davidson Cty.*, 555 U.S. 271, 274 (2009). Courts provide less protection for opposition activities than they do for participation activities.  *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312 (6th Cir. 1989).

Some mention must be made of Appellees' red herring argument about emails between counsel in mid-September 2022: the fact that Dr. DiChiara determined to stop participating at that point does not negate the fact that she previously did so, and that she was fired for doing so.  Title VII and ADA anti-retaliation statutes and case law do not withdraw protection if a witness gets cold feet.  The second red herring is Appellees emphasis on Dr. DiChiara's September letter where they conflate her statement about not wanting to be a Plaintiff in *Beckerich* with her undisputed status as a class member and participation in that matter by providing evidence, which they knew about.

### A. Dr. DiChiara engaged in protected activity when she "participated in any manner" in a "proceeding:" providing the plaintiffs' law firm with "ammunition" for and "to help build the case" for the *Beckerich* ADA and Title VII plaintiffs

3

This Court has recognized that the "participation" clause's "exceptionally broad protections . . . extend[] to persons who **have participated in *any manner*** in Title VII proceedings." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 582 (6th Cir. 2000) (emphasis added). "[O]nce the activity in question is found to be within the scope of the participation clause, the employee is generally protected from retaliation." *Booker*, 879 F.2d at 1312. Simply put, if an employer knows of employee participation in preparing for a Title VII lawsuit or EEOC charge against it, and terminates the employee as a result, the employer is liable.

Here, Appellees ignore their dispositive admissions from their termination letter and then claim the timeline of events is irrelevant, and that the district court was right to ignore it. (R. 29 at 15). However, Appellees' ignoring their own admissions doesn't mean those admissions don't exist. And, as far as the timeline, "[i]nquiries into what motivated an employer's decision 'are very fact intensive' and 'will generally be difficult to determine at the summary judgment stage." *Spees v. James Marine, Inc*., 617 F.3d 380, 390 (6th Cir. 2010) (citing *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008)). Here, of course, it is undisputed that Dr. DiChiara was motivated to share communications (between herself and Colvin and Pritchard regarding religious accommodations) with the law firm pursuing Title VII and ADA claims against Appellees because they were relevant to those claims and, as she told the law firm in one of her communications

4

with it, she wanted "**to help build your case.**"  (Depo. DiChiara, Doc. 50, at 46-47,

72, 90-94, 97-98, 100, 103-107, 120-122, 131-133, 161, Exhibit 22, Doc. 50-22,

PageID#2529-2530, 2555, 2573-2577, 2580-2585, 2603-2606, 2634, 2739-2740,

2913-2917).    She also wanted the firm to "store" the communications "**as

ammunition**" for the case to ensure the Title VII and ADA claims were successful.

*Id.*  Without question, this is participation in any manner in those claims. *Gray,* 159

F.4th 1024.  And without question, that was why she was fired.

Appellants cite to *Aldrich v. Rural Health Services Consortium, Inc.*, 579 F.

App'x 335 (6th Cir. 2014), to falsely claim that Dr. DiChiara's conduct did not rise

"to the level of protected participation."  (R. 29 at 15-16).  In *Aldrich*, an employee

was fired for forwarding employer documents from her work email to her private

email, but she *never* gave the documents to a third party for the purpose of

participating "in any manner" in a Title VII or ADA proceeding.  *Id.*, at 336.  *Aldrich*

is inapposite to the facts of this case.

In contrast, *Gray* is on all fours with this case, although the facts in *Gray* are

even less egregious than the facts in this case, especially when viewed *in a light most

favorable to the party opposing* Appellees' motion for summary judgment.  In *Gray*,

the plaintiff aided a coworker in securing an accommodation under the ADA and

was subject to a retaliatory investigation and firing as a result.  159 F.4th 1024.  This

Court held that Gray's informal assistance to a coworker was more than sufficient

to protect her in "aid[ing] others' exercise of their statutory rights." *Id.* at *8-9 (*citing Rorrer*, 743 F.3d 1025, 1046). In fact, merely "pushing back" against a denial of an accommodation "qualif[ies] as protected activity." *Id.*, at *9.

As noted, it is undisputed Dr. DiChiara confidentially gave the disputed documents to a law firm as "***ammunition***" for, and "***to help build***," Title VII and ADA claims in a filed lawsuit (i.e.: a proceeding). (Depo. DiChiara, Doc. 50, at 46-47, 72, 90-94, 97-98, 100, 103-107, 120-122, 131-133, 161, Exhibit 22, Doc. 50-22, PageID#2529-2530, 2555, 2573-2577, 2580-2585, 2603-2606, 2634, 2739-2740, 2913-2917). As this Court has held, if "the documents that [Dr. DiChiara] had given to … lawyers had been directly (***or even indirectly***) relevant to the … claims raised in [a Title VII or ADA] lawsuit, her delivery of those documents would ***clearly constitute*** participation in that lawsuit." *Niswander*, 529 F.3d 714, 721 (emphasis added). Likewise, where an employee provides documents to an attorney litigating a Title VII or ADA claim "***reasonably believing***" that the documents are relevant to those claims, then such document delivery is protected activity. *Id.* at 722. (emphasis added).

On this record and based on this Court's precedents, the district court erred in holding that "the documents Plaintiff provided to Deters were not relevant to the Title VII or ADA claims asserted in *Beckerich II*." (Doc. 72 at 15, PageID#3544). Protection arises under the participation clause regardless of the disposition of, or

6

the strategy of the attorney handling (including how that attorney uses evidence in the case), the underlying Title VII or ADA matter. *Simpson v. Vanderbilt Univ.*, 359 F. App'x 562, 570-71 (6th Cir. 2009) (*citing Johnson*, 215 F.3d 561, 579-80).

Here, Dr. DiChiara gave unrebutted testimony that she believed the documents she provided to the law firm were relevant and material to the Title VII and ADA claims the law firm was making, because the information she provided would go to the undue burden issue in such claims. (Depo. DiChiara, Doc. 50, at 46-47, 72, 90-94, 97-98, 100-102, 120-122, 131-133, 161, Exhibits 7, 22, Doc. 50-7, 50-22, PageID#2529-30, 2555, 2573-77, 2580-81, 2583-85, 2603-05, 2604-06, 2634, 2739-40, 2913-17). In addition, Dr. DiChiara's expert, Attorney Rob Stokar, gave unrebutted expert testimony confirming that a reasonable plaintiff's employment attorney litigating Title VII and ADA claims would find this evidence important. (Dec. Stokar, Doc. 53-2, PageID#3268-3288). Like much of Dr. DiChiara's evidence, this evidence was ignored by the district court, as was the testimony of Appellees' corporate human relations representative who admitted the information Dr. DiChiara provided to the law firm ***was relevant*** to the Title VII and ADA claims. (Depo. Deiman, Doc. 49, at 16-17, 29, 30-32, PageID#2410-11, 2423, 2424-26).

Regardless, and as a matter of law, the information Dr. DiChiara provided to the law firm was relevant to Title VII and ADA claims on the issue of the undue

burden defense, which considers a wide range of facts and evidence.  42 U.S.C. §

2000e(j); *Groff v. DeJoy*, 600 U.S. 447, 468 (2023); 42 U.S.C. § 12112(b)(5)(A);

*Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868-69 (6th Cir. 2007).  Ironically,

the district court itself explained the relevance of this type of evidence in its analysis

of the Title VII and ADA claims in the underlying lawsuit. *Beckerich v. St. Elizabeth*

*Med. Ctr.*, 563 F.Supp.3d 633, 642 (E.D. Ky. 2021).

On August 6, 2021, the CDC recognized that the COVID-19 vaccines worked

"with regard to severe illness and death… [b]ut what they c[ouldn]'t do anymore is

prevent transmission."[1]  Given that Appellees justified their Mandate (implicitly and

explicitly) on the grounds that compelled vaccination was necessary "to stop the

spread" of COVID-19, this evidence undermines any burden claimed by Appellees

when considering religious accommodations.  Likewise, published case law in this

district has identified natural immunity from prior infection and recovery as a

potential accommodation to a vaccination requirement. *See Poffenbarger v. Kendall*,

588 F. Supp. 3d 770, 783-784 (S.D. Ohio 2022).  Other courts have drawn the same

conclusion when it comes to accommodating religious beliefs opposed to COVID

vaccine mandates. *Air Force Officer v. Austin*, 588 F. Supp. 3d 1338, 1354-1355

---

[1] Statement by Rochelle Walensky, U.S. Centers for Disease Control, CNN
Interview (Aug. 5, 2021). See, also,
https://www.cdc.gov/mmwr/volumes/70/wr/mm7031e2.htm (last accessed
1/9/2026).

(M.D. Ga. 2022); *Texas v. Becerra*, 575 F. Supp. 3d 701 (N.D. Tex. 2021) (robust discussion of natural immunity as an exception to vaccination policy).

The district court simply ignored this evidence, the admissions by Appellees (Depo. Prichard, Doc. 45, at 287), and the law (Doc. 72) and held that the documents Dr. DiChiara provided to the law firm, pertaining to vaccine efficacy, were not relevant to the Title VII and ADA claims. In contrast, this Court has taken to task plaintiffs who do not present the exact sort of evidence Dr. DiChiara provided here. *Kizer v. St. Jude Child.'s Rsch. Hosp.*, 2024 U.S. App. LEXIS 29429 at *12 (6th Cir. 2024).

Appellees erroneously argued there could be no illegal retaliation without an EEOC charge, which was not filed in *Beckerich*. Yet, the U.S. Supreme Court made clear this is no longer jurisdictional. *Fort Bend Cty. v. Davis*, 587 U.S. 541, 550-551 (2019). The plain language of the anti-retaliation provisions of Title VII and the ADA confirms that protection is given to any person "because [s]he has … **assisted, or participated in any manner** in a … proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a) (emphasis added). "This subchapter" is 42 U.S.C. Chapter 21, subchapter VI, and it includes "lawsuits" in its listing of "proceedings" to enforce Title VII. The Supreme Court was unequivocal that Congress separately enacted 42 U. S. C. §2000e-5(f)(3) to confer jurisdiction and ensure that there would not be an impediment to a "complainant's access to a federal

9

forum." *Fort Bend Cty.*, 587 U.S. 541 at 550, fn.7. *See also New York Gaslight Club v. Carey*, 447 U.S. 54, 61 (1980) ("throughout Title VII the word 'proceeding,' or its plural form, is used to refer to **all the different types of proceedings in which the statute is enforced**, state and **federal**, administrative **and judicial**."). The same language is found in the ADA. 42 U.S.C. § 12203(a).

The anti-retaliation provisions in Title VII and the ADA "seek[] to secure that primary objective by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees [of freedom from discrimination]." *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 61 (2006). Requiring a filed EEOC charge as a jurisdictional requirement "would fail to fully achieve the antiretaliation provision's 'primary purpose,' which is '[m]aintaining unfettered access to statutory remedial mechanisms.'" *Id.* The Supreme Court in *White* stated the anti-retaliation provisions exist to prohibit "employer actions that are likely 'to deter victims of discrimination from complaining to … **the courts**…" *Id.* at 68 (emphasis added). *White* also noted that resort should be made to the EEOC's regulations and guidance. *Id.* at 64. The EEOC compliance manual does not limit protection to only situations where an EEOC charge has been filed.[2]

---

[2]    Available at: https://www.eeoc.gov/laws/guidance/enforcement-guidance-retaliation-and-related-issues#1._Participation (last accessed 1/9/2026).

Courts uniformly hold that participating in a lawsuit that raises Title VII or ADA allegations (as Dr. DiChiara did here) is within the ambit of the participation clause and anti-retaliation provisions of Title VII and the ADA. *Murphy v. District of Columbia*, 390 F. Supp. 3d 59, 71-72 (D.D.C. 2017); *Truelove v. Trustees of Univ. of Dist. of Columbia*, 744 F. Supp. 307, 313 (D.D.C.1990); *Merritt v. Dillard Paper Co.*, 120 F.3d 1181 (11th Cir. 1997); *Patterson v. Georgia Pac., LLC*, 38 F.4th 1336 (11th Cir. 2022); *Barbour v. Garland*, 105 F.4th 579 (4th Cir. 2024); *EEOC v. Bd. of Governors of State Colleges and Univs.*, 957 F.2d 424, 425-426 (7th Cir. 1992); *Martin v. Mecklenburg County*, 151 Fed. Appx. 275 (4th Cir. 2005).

**B.     Dr. DiChiara engaged in protected activity by opposing practices made illegal under Title VII and ADA, and Appellees knew as much**

Dr. DiChiara also prevails under the opposition clause. The opposition clause covers conduct such as "complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices…" *Johnson*, 215 F.3d at 579. The Supreme Court provides broad construction to "opposition," defining it as "'to resist or antagonize...' to contend against; to confront; resist; withstand." *Jackson v. Genesee Cnty. Road Comm'n*, 999 F.3d 333, 344 (6th Cir. 2021) (*quoting Crawford*, 555 U.S. 271, 276). "[T]he only qualification … placed upon an employee's invocation of protection from retaliation under Title VII's opposition

clause is that the manner of [the employee's] opposition must be reasonable." *Johnson*, 215 F.3d at 580.

This Court employs a balancing test for the opposition clause activity of providing documents, protected under employer policies, to third parties. Those factors are: (1) how the documents were obtained, (2) to whom the documents were produced, (3) the content of the documents, both in terms of the need to keep the information confidential and its relevance to the employee's claim of unlawful conduct, (4) why the documents were produced, including whether the production was in direct response to a discovery request, (5) the scope of the employer's privacy policy, and (6) the ability of the employee to preserve the evidence in a manner that does not violate the employer's privacy policy. *Niswander*, 529 F.3d 714, 726.

Here, the district court erred in finding Dr. DiChiara's opposition was unreasonable as a matter of law. The first factor supports Dr. DiChiara because she was a party to the emails at issue and appropriately was in possession of them, as was held by the district court. The second factor also supports Dr. DiChiara, because she provided documents to the law firm that, undisputedly, represented her both regarding her legal consultation and as a putative class member. Ignoring this evidence, the district court, without citing *any* case law, found that it was unreasonable to provide the documents to Mr. Deters, as a representative of the law

12

firm, because Mr. Deters was no longer an attorney.  That ignores the fact Mr. Deters operated as a representative of the law firm that filed the *Beckerich* suit.

The district court also failed to credit Dr. DiChiara's understanding of Mr. Deters' role as a representative of the law firm.  (Depo. DiChiara, Doc. 50, at 26-28, PageID#2509-11).  To affirm the district court's finding would result in an inability of clients in *any* employment law context to communicate with paralegals, secretaries, law clerks, or any other employee of a law firm (all of whom are still bound by attorney-client privilege).

 The third factor also supports Dr. DiChiara because she provided documents that she, the law firm, and any reasonable attorney litigating a Title VII and ADA claim concerning the Appellees' vaccine requirements would find relevant, including as to undue burden and reasonable accommodation options.  The district court simply ignored this record evidence and erroneously found the documents pertaining to vaccine efficacy irrelevant.  Numerous courts, including the district court itself in *Beckerich*, have concluded otherwise.

The fourth factor, which the district court simply ignored, also supports Dr. DiChiara, because the documents were provided in support of lawsuit filing and preliminary injunctive relief, which would not yield the documents in the discovery process as such proceedings occur over a short period.

The district court found the fifth factor to favor Appellees, but it is unclear whether the employer's privacy policy in fact covered these documents, contrary to the district court's holding.  Again, the Court "must shy away from weighing the evidence and instead view all the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in their favor." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 410 (6th Cir. 2021).  At a minimum, it is a question of fact as to whether the emails are included in Appellees' privacy policy.  Brief, R. 28 at 17-20.

Finally, the sixth factor favored Dr. DiChiara, as it is unclear whether there was any other way to preserve this evidence at the injunctive stage of the *Beckerich* lawsuit, where discovery was not available.  In other words, and especially construing all facts in favor of Dr. DiChiara, all factors favor Dr. DiChiara.  Supporting this conclusion is also the unrebutted evidence that Dr. DiChiara's dissemination of the emails to the law firm was under a reasonable expectation of privacy and privilege, which the law firm improperly violated.  Dr. DiChiara's opposition was reasonable in light of *Crawford*, 555 U.S. 277-78.

## C.    Appellees admit under oath they had notice of Dr. DiChiara's participation and opposition, and the district court simply ignored these admissions

Ignoring the undisputed record yet again, the district court held and Appellees argue, without any factual basis, that they had no notice of Dr. DiChiara's protected activity.

14

Consistent with their testimonial admissions is Appellees' ("smoking gun") lawyer-vetted termination letter: that Dr. DiChiara's provision of evidence/material to a law firm in support of the *Beckerich* Title VII and ADA claims, and her refusal to waive attorney-client privilege, ***was the basis of her termination from employment***.   (Depo. DiChiara, Doc. 50, at 159, Exhibit 44, Doc. 50-44, PageID#1642, 3107-08; Depo. Prichard, Doc. 45, at 269-270, 287-288, 290, 293-294, 302; Ex. 59, Doc. 44-59, PageID#1836-37, 1854-55, 1857, 1860-61, 1869, 1032-33).   In other words, Appellees put in writing that they knew she was engaged in protected activity and fired her because of her participation.   Of course, in their brief, Appellees mischaracterize this evidence in a light most favorable to them by stating "the letter merely stated that one basis for termination was the disruptive and unprofessional disclosure [to a law firm] of the emails related to the subject matter of *Beckerich I* and *II*." (R. 29, at 29).   This admission demonstrates knowledge of protected activity.

Appellees then argue that no invocation of Title VII or the ADA was made, the law does not require such invocation. *Sitar v. Ind. Dep't of Trnsp.*, 344 F.3d 720, 727 (7th Cir. 2003); *Tennant v. District of Columbia*, 2020 U.S. Dist. LEXIS 137502, at *22 (D.D.C. 2020); *Newell v. Heritage Senior Living, LLC*, 2016 U.S. Dist. LEXIS 13416, at *7 (E.D. Pa. 2016).

Moreover, Appellees' knowledge is further established by the recording of the termination meeting, where Dr. Prichard admits he knew of Dr. DiChiara's assertion of privilege and her participation in *Beckerich*, but he fired her because of her ***"use"*** of those documents. (Doc. 54; Doc. 55, conventional audio recording). Here, it is undisputed that "use" was to give the documents to a law firm, pursuing Title VII and ADA claims, as ammunition for those claims. And significantly, this termination meeting occurred weeks after Dr. DiChiara's attorney gave written notice to Appellees that if they terminated Dr. DiChiara, it would violate Title VII anti-retaliation provisions. (Doc. 44-53, PageID#1021). That email runs contrary to Appellees' false representation to this Court that Dr. DiChiara did not raise Title VII and the ADA.

Regardless, knowledge is typically a question to be resolved by a trier of fact. *Anderson v. City of Bessmer*, 470 U.S. 564, 577 (1985); *Crutcher v. Commonwealth of Kentucky*, 883 F.2d 502, 504 (6th Cir. 1989); *Mulhall v. Ashcroft*, 287 F.3d 543, 551-54 (6th Cir. 2002). And as the district court correctly noted, it merely requires proof raising an inference. (Doc. 72 at 19, PageID#3548). As demonstrated above, Dr. DiChiara did far more than that.

But here, in addition to ignoring literal "smoking gun" evidence, the district court also failed to draw a negative inference from Appellees' admission of consulting with counsel regarding the reasons for terminating Dr. DiChiara (Depo.,

Prichard, Doc. 45 at pp. 220-221, 270, PageID#1787-88, 1837), coupled with Dr. Prichard's later invocation of, and refusal to waive, his attorney-client privilege about those conversations once he was sued (*id.* at 316, PageID#1883).

However, it has long been the law that such a negative inference is legally permissible. *Graves v. United States*, 150 U.S. 118, 121 (1893). And that extends to assertions of privilege. *McKinney v. Galvin*, 701 F.2d 584, 589 (6th Cir. 1983); *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). Not surprisingly, Appellees ignore this caselaw when merely arguing the negative inference "does not exist." (R. 29 at 30).

Consequently, viewing these undisputed facts in the light most favorable to Dr. DiChiara raises the inference that Dr. Prichard was fully informed by counsel for SEP (and by counsel for Dr. DiChiara who warned Appellees) of the legal ramifications of terminating Dr. DiChiara in violation of law, and he chose to do so anyway. Simply put, it is a reasonable inference that Dr. Prichard's defense to significant personal liability would be to assert that he was only following advice of counsel, and refusing to waive privilege regarding the advice actually given raises a compelling inference that he knew he was breaking the law and proceeded anyway. In fact, the same negative inference arises where Dr. Prichard repeatedly consulted with Colvin about this illegal course of action, also after consultation with counsel

17

for SEP, yet Appellees proceeded anyway. (Depo. Prichard, Doc. 45 at 216-217, PageID#1783-84).

On this record, the district court's finding, as to Appellees' purported lack of notice of protected activity, is baseless. Dr. DiChiara is entitled to summary judgment on the notice issue.

### D. Adverse employment action was taken against Dr. DiChiara because of her protected activity

While the district court did not reach adverse action or causation, termination is adverse action. *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 594 (6th Cir. 2007). Dr. DiChiara's employment was terminated. (Depo. DiChiara, Doc. 50, at 159, Exhibit 44, Doc. 50-44, PageID#1642, 3107-08).

As for causation, the burden is minimal. *Gray,* 159 F.4th 1024 at *9 (citing *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 588 (6th Cir. 2009). Here, Appellees admitted that Dr. DiChiara's provision of evidence/material to the law firm in support of the *Beckerich* Title VII and ADA claims was the basis of her termination. (Depo. DiChiara, Doc. 50, at 159, Exhibit 44, Doc. 50-44, PageID#1642, 3107-08; Depo. Prichard, Doc. 45, at 269-270, 287-288, 290, 293-294, 302; Ex. 59, Doc. 44-59, PageID#1836-37, 1854-55, 1857, 1860-61, 1869, 1032-33).

As noted, Appellees attempt to draw this Court's attention to plain irrelevancies, such as the motivations of Dr. DiChiara. (R. 29, at 1, 6, 46-47). At no point do they cite any law holding that a plaintiff's motivations in engaging in

protected conduct is relevant.  Nor can they, as such case law simply does not exist.  Rather, only a defendant's motivation in taking adverse action is relevant to this inquiry.  *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981).

Appellees also argue lack of pretext claiming they believed Dr. DiChiara's conduct violated their policies and there is no evidence to the contrary as far as their motivations are concerned.  Again, *Gray* controls.  "Usually, plaintiffs show pretext by arguing that the employer's proffered reason lacked a factual basis, did not actually motivate the adverse action, or was insufficient to motivate the adverse action."  *Gray*, 159 F.4th 1024 at *12 (citations omitted).  As shown, and through their own admissions in their lawyer vetted termination letter, Appellees' motivation to fire Dr. DiChiara was her provision of evidence/material to the law firm in support of the *Beckerich* Title VII and ADA claims.  (Depo. DiChiara, Doc. 50, at 159, Exhibit 44, Doc. 50-44, PageID#1642, 3107-08; Depo. Prichard, Doc. 45, at 269-270, 287-288, 290, 293-294, 302; Ex. 59, Doc. 44-59, PageID#1836-37, 1854-55, 1857, 1860-61, 1869, 1032-33).

### E. SEH also is liable

SEH is liable under the "joint employer," "integrated enterprise," and "interference with employment" theories.  Under the "joint employer" doctrine, "an entity that is not the plaintiff's formal employer may be treated…as if it were the

employer for purposes of employment laws such as Title VII." *Sanford v. Main St. Baptist Church Manor, Inc.*, 449 F. App'x 488, 491 (6th Cir. 2011). Entities are joint employers if they "share or co-determine those matters governing essential terms and conditions of employment." *EEOC v. Skanska USA Bldg., Inc.*, 550 F. App'x 253, 256 (6th Cir. 2013) (*quoting Carrier Corp. v. NLRB*, 768 F.2d 778, 781 (6th Cir. 1985)); *see also Sanford*, 449 F. App'x at 492. Under this test, the major factors include the "entity's ability to hire, fire or discipline employees, affect their compensation and benefits, and direct and supervise their performance." *Skanska*, 550 Fed. Appx. at 256. Critically, the test is not whether the parent actually controlled employee performance, but instead whether it had the ***ability*** to do so. *Id.*

In addition, when two entities are so interrelated that they may be considered a "single employer" or an "integrated enterprise," it renders the second entity liable as an employer. *See, e.g., York v. Tennessee Crushed Stone Ass'n*, 684 F.2d 360 (6th Cir. 1982). In making this determination, courts examine the degree to which the two entities share: (1) interrelation of operations, i.e., common offices, common record keeping, shared bank accounts and equipment; (2) common management, common directors and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control. *Id.* at 362. None of these factors is conclusive, and not all four need to be met. *Armbruster v. Quinn*, 711 F.2d 1332, 1337-38 (6th Cir. 1993). For instance, integrated enterprise liability was

established where the president of one company also was a director and officer of the other company. *Id.* at 1339.

Appellees' assertion they are not joint employers is contradicted by their own admissions that (1) SEP's sole member and owner is SEH (Depo. Bast, Doc. 46, at 11-12, Ex. 67, Doc. 44-67), (2) SEH maintained sole powers in the SEP bylaws to permit the SEH board to take action over any issue affecting SEP (*Id.*, at 13), (3) SEH's CEO maintains control and direction over SEP through reverse powers to direct and control SEP's employment decisions, and (4) the SEH CEO sits on the board of SEP along with two other of his appointees along with two other appointees to maintain control of the subsidiary. These factors plainly demonstrate centralized control of labor relations and personnel.

## II. The district court erred in granting summary judgment to Appellees and denying summary judgment to Dr. DiChiara on her KCRA claim

The district court granted summary judgment to Appellees on the KCRA claim because "[u]nlawful retaliation under the KCRA is interpreted consistently with retaliation under federal law." *Hamade v. Valient Government Services LLC*, 2019 WL 1410904 (W.D. Ky. Mar. 28, 2019); *see also, Benningfield v. Fields*, 584 S.W.3d 731, 739-40 (Ky. 2019). But for the same reasons it erred in dismissing the federal claims, it erred in dismissing the KCRA claim.

As for the direct retaliation claims against SEH, SEP, Colvin and Dr. Prichard, the intra-corporate conspiracy doctrine is not applicable to individual retaliation

21

claims under KRS 344.280 (as opposed to conspiracies to violate non-discrimination laws). *Cowing v. Commare*, 499 S.W.3d 291 (Ky. App. 2016); *Myers v. Red Classic Transit*, 2019 U.S. Dist. LEXIS 202845 at *17 (E.D. Ky. 2019); *Cobble v. Yamamoto FB Engineering, Inc.*, 2017 U.S. Dist. LEXIS 2561, 2017 WL 88992 (W.D. Ky. Jan. 9, 2017). Moreover, KRS 344.280 expressly forbids retaliation by "a person," plainly permitting the imposition of liability on individuals, to include supervisors or others such as Colvin and Dr. Prichard here. *Id.* (*citing Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 794 (6th Cir. 2000)).

Because Dr. DiChiara, not Appellees, should have prevailed on her Title VII/ADA retaliation claims, *see supra* at § I, Dr. DiChiara should have been granted partial summary judgment on her KCRA claim.

## III. The district court erred in granting summary judgment Appellees and denying summary judgment to Dr. DiChiara on her discharge against public policy claim

The district court erred in holding that the tort of discharge against public policy does not apply to the facts of this case. The district court's sole reason was that there was not specifically on point Kentucky case law that applied the tort beyond the at-will context. However, if there is no direct precedent, federal courts must predict how the state's highest court would rule. *United States v. Simpson*, 520 F.3d 531, 535 (6th Cir. 2008). There is no reason to believe that the Kentucky Supreme Court would be the first court in the country to decline to extend the tort to

situations where there is a contract (particularly a contract that permits at-will discharges), nor to be the first court that would decline to extend the tort to attorney-client protections – and every reason to believe that it would follow every other court that has addressed these issues (and there are many as shown in our Appellant's Brief).  The employment-related nexus test is satisfied where there is a "right to [engage in the act in question in the context of] a private workplace." *Marshall v. Montaplast of N. Am., Inc.*, 575 S.W.3d 650, 655-56 (Ky. 2019).

Partial summary judgment for liability on this Count should have been granted to Plaintiff.

## IV. The district court erred in granting summary judgment to SEP and denying summary judgment to Dr. DiChiara on her breach of contract claim

The district court held as a matter of law that Dr. DiChiara violated Sections 10.2(h), (m), (n), and (q) of her employment agreement.  Dr. Prichard's testimony on the 10.2(h) allegation was that there was no violation of that section by communicating with a lawyer about rights or duties, and that SEP had no information that this was not the case with respect to Dr. DiChiara; he admitted if communications with a law firm were in any way related to Title VII and ADA claims, then those communications also properly would be provided to an attorney under the policy. (Depo. Prichard, Doc. 45, at 273-275, PageID#1840-42).  Of course, Dr. DiChiara testified that was precisely why she forwarded the documents

to the law firm. (Depo. DiChiara, Doc. 50 at 29-31, 47-50, 90-94, 100, 103-107, 120-122, PageID#2512-2514, 2530-2533, 2573-2578, 2584, 2587-2592, 2605-2607).

Ignoring this undisputed evidence, the district court held that Dr. DiChiara had to inform Appellees why she forwarded the documents to the law firm, because it wasn't sufficient that Dr. DiChiara knew why she forwarded the documents. (Doc. 72 at 22-23, PageID#3551-3552). But the burden was on Appellees, not Dr. DiChiara to ascertain Dr. DiChiara's intent before they fired her.

As for 10.2(m), Dr. Prichard admitted that providing communications to a law firm in furtherance of Title VII or ADA claims was permissible and not disruptive to, or inconsistent with, the best interests of the organization, as the organization had a duty to comply with the law. (Depo. Prichard, Doc. 45, at 276-286, PageID#1843-53). Ignoring this undisputed evidence, the district court reasoned that SEP could terminate the employment agreement under the "sole determination" language in 10.2(m) (even where no valid grounds existed). Yet, Kentucky courts impute an implied duty of good faith and fair dealing in the performance of every contract and with respect to such a clause. *RAM Engineering & Construction, Inc. v. Univ. of Lousiville*, 127 S.W.3d 579, 584 (Ky. 2003); *Farmers Bank & Trust Co. v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005). Moreover, this provision is ambiguous, thus requiring construction in favor of Dr. DiChiara's interpretation and not Appellees. *Theatre Realty Co. v. P.H. Meyer Co.,* 243 Ky. 346, 48 S.W.2d 1, 2

(Ky. 1932). Doing so results in the "sole determination" language merely modifying whether to apply SEP or SEH policies but not leaving it to Appellees' "sole determination" as to whether a policy is violated in the first instance. Regardless, Appellees admitted that engaging in protected activity does not violate SEP or SEH policies. As a matter of law, Defendants' breached the employment agreement.

As for 10.2(n), Dr. Prichard testified that unprofessional meant a violation of the Kentucky Medical Board rules. (Dep. Prichard, Doc. 45, at 52). But Appellees cannot cite to any evidence suggesting such a violation.

As for 10.2(q), involving disloyalty, once again, the contract requires a determination made in good faith, which is not the case here. (Doc. 44-4). *See also*, *RAM Engineering & Construction, Inc.*, 127 S.W.3d 579, 584. Further, 10.2(q) and (m) are ambiguous, requiring the court to construe this language in favor of Dr. DiChiara. *Theatre Realty Co.*, 243 Ky. 346.

Dr. DiChiara should be granted summary judgment on her Breach of Contract Claim.

## V. The district court erred in granting summary judgment to Appellees SEH and Colvin and denying summary judgment to Dr. DiChiara on her tortious interference claim

While Appellees argue there was no breach of contract, the existence of the contract is not in dispute. (Depo. Prichard at Exhibit 4, PageID#522-558). Colvin, as CEO of SEH, was aware of the contract. (Depo. Colvin, Doc. 47 at 21,

PageID#2157).  Here, of course, Colvin and Dr. Prichard met to discuss terminating Dr. DiChiara, and they actually agreed upon terminating Dr. DiChiara.  (Depo. Prichard, Doc. 45, at 80-82, 216-218, 253-254, 306, PageID#1647-1649, 1783-1785, 1820-1821, 1873; Depo. Colvin, Doc. 47, at 119 PageID#2255).  That testimony is sufficient to establish the intention to cause a wrongful termination of the agreement.

Appellees argue Colvin was a bystander, but that ignores the more than reasonable inference that multiple meetings to discuss the termination would not have occurred with a mere bystander: Dr. Prichard involved Colvin because they knew terminating Dr. DiChiara's employment would be illegal, and the top officer had to be involved and personally bless that decision.  For the reasons outlined in Section IV, *supra*, there was a breach of contract.

"Wrongful means is 'defined to include acts which are wrongful in and of themselves, such as … any other wrongful act recognized by statute or common law.'"  *Sparkman v. Consol Energy, Inc.*, 571 S.W.3d 569, 572 (Ky. 2019).  The violations of law, as set forth in Sections I through IV of this brief suffice.  *Id.*  Colvin acted at all times in the course and scope of CEO for SEH, making SEH liable under agency principles.  *Patterson v. Blair*, 172 S.W.3d 361 (Ky. 2005).

Dr. DiChiara has demonstrated tortious interference (or least an issue of fact on this claim).

**VI.    The district court erred in granting summary judgment to Appellees and denying summary judgment to Dr. DiChiara on her declaratory judgment claim**

Appellees claim this is moot.  It is not.  Appellees' action prevented Dr. DiChiara from finding comparable employment in the geographic non-competition area, resulting in her opening her own telemedicine practice and they have raised a failure to mitigate damages defense.  (Doc. 8, ¶106).  Yet a determination that Appellees illegally enforced a non-compete agreement against her will have a direct bearing on this defense at trial and equally goes to the malice issue to be presented to the jury.  This presents a present controversy, and an issue of law that needs to be resolved by the Court.

Appellees' one-year, non-competition provision covered a 20-air mile distance prohibiting Dr. DiChiara from practicing medicine, with the area measured from any SEP office or facility where the physician practiced in the preceding year. (Depo. Prichard at Exhibit 4, Agreement, at page 11-12, ¶11).  The provision did not apply, however, if SEP terminated the agreement without adequate cause (as it did here, as a matter of law).  *Id.* at ¶11.1(a)

Termination here violated federal and state law.  Thus, the clause was not triggered with respect to the improper termination of Dr. DiChiara, and she is entitled to judgment to that effect.  The district court erred in holding otherwise.

## CONCLUSION

The district court erred in granting Appellees summary judgment on Dr. DiChiara's claims.  Its decision should be reversed, including with instructions to enter partial summary judgment in favor of Dr. DiChiara on claims I, II, IV, V, and VII.

Respectfully submitted,

/s/ Christopher Wiest_____
Christopher Wiest (KBA 90725)
Theodore J. Roberts (KBA 100610)
Chris Wiest, Atty at Law, PLLC
50 E. Rivercenter Blvd, Ste. 1280
Covington, KY 41011
513/257-1895 (c)
chris@cwiestlaw.com

 /s/Thomas B. Bruns_____
Thomas B. Bruns (KBA 84985)
Bruns Connell Vollmar & Armstrong
4555 Lake Forest Drive, STE 330
Cincinnati, OH 45242
tbruns@bcvalaw.com
513/312-9890
*Attorneys for Plaintiff/Appellant*

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing upon Counsel for the Defendants/Appellees, this 9 day of January, 2026, by filing same with the Court via its CM/ECF system, and by electronic mail upon Counsel for the Defendants/Appellees, which will provide notice to all parties' Counsel.

/s/ Christopher Wiest_____

28

## CERTIFICATE OF COMPLIANCE

As required by Fed. R. App. P. 32(g) and 6th Cir. R. 32(a), I certify that this Appellant's Reply Brief contains 6,493 words. This response complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in 14-point Times New Roman font using Microsoft Word.

/s/ Christopher Wiest_____